UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 07-21783-CIV-JORDAN

| | |
|---|---|
| TEÓFILA OCHOA LIZARBE, in her individual capacity, and in her capacity as the personal representative of the estates of Silvestra Lizarbe Solis, Gerardo Ochoa Lizarbe, Victor Ochoa Lizarbe, Ernestina Ochoa Lizarbe, Celestino Ochoa Lizarbe, and Edwin Ochoa Lizarbe, et al., | ) ) ) ) ) ) ) |
| Plaintiffs | ) ) |
| vs. | ) |
| TELMO RICARDO HURTADO HURTADO, | ) ) ) |
| Defendant | ) |

**ORDER ON DAMAGES**

The plaintiffs brought this action pursuant to the Torture Victim Protection Act of 1991, 28 U.S.C. § 1350 note, the Alien Tort Statute, 28 U.S.C. § 1350, and 28 U.S.C. § 1331. The defendant, Telmo Ricardo Hurtado Hurtado, defaulted, and a judgment on liability was entered against him. Although Mr. Hurtado was present at the bench trial on damages pursuant to a subpoena issued by the plaintiffs, he invoked his Fifth Amendment privilege against self-incrimination and expressly stated that he did not want to participate in any way in the trial.

This order addresses the damages to be awarded to the plaintiffs.

**I. FACTS**

Mr. Hurtado was in charge of certain Peruvian military forces which carried out the so-called Accomarca Massacre on August 14, 1985, in a mountainous region of Peru. The security forces went to Accomarca – an indigenous area of Peru in a zone under military command – and the nearby area of Lloccllapampa (a savannah below Accomarca where crops and some houses were located), looking for members of the Sendero Luminoso (or Shining Path), a terrorist insurgent group dedicated to overthrowing the Peruvian government by violent force, and which had a presence in Accormarca. As reports from the Peruvian Truth Commission and a Senate Investigative Panel

indicated, the residents of Accomarca were caught between the Sendero Luminoso, which did not hesitate to exterminate all those who opposed it, and the military, which was involved in an all-out war to eradicate the terrorist group.

Although no Sendero Luminoso members or weapons were found in the area, Mr. Hurtado ordered his men to round up Lloccllapampa's residents on the pretense that there was going to be some sort of assembly or meeting. The soldiers then, on Mr. Hurtado's orders, brutally beat the men, and raped some of the women. Then they killed almost all of the residents who had been rounded up with machine-gun fire and grenades. Mr. Hurtado himself lobbed one grenade into a small house where some of the residents had been forced into. The soldiers subsequently went from house to house in Lloccllapampa, looking for and killing all who could be found.

In all, over 60 people – including the elderly, pregnant women, young children, and babies – were murdered at Accomarca. The dead included Ms. Lizarbe's mother and five siblings, one of whom was a year old,[1] and Ms. Baldion's mother and 9-month-old brother.[2] After the killing, the soldiers put on white t-shirts and headed up to Accormarca, where they celebrated.

Some young children who had been left behind at home by their parents survived and ran away, hiding in the mountains and trees overnight, in the hope that the soldiers would not find them and kill them too. The plaintiffs, Ms. Lizarbe and Ms. Baldeon, both then 12 years old, were two of the survivors. In Ms. Lizarbe's case, the soldiers shot at her and followed her after the massacre, but she was able to avoid them and escape, finding refuge under a large rock and sleeping under a tree. One of her brothers was not so fortunate, and was killed by the soldiers as he ran down a hill saying he wanted to die with his mother. Ms. Baldion, unlike Ms. Lizarbe, spent the night in her house with her surviving siblings. They could not cook any food for fear of being detected by the soldiers, and they had to endure the smell of burning flesh coming from the area where the massacre had taken place.

---

[1] The deceased members of the Lizarbe household were Silvestra Lizarbe Solis, Gerardo Ochoa Lizarbe, Victor Ochoa Lizarbe, Ernestina Ochoa Lizarbe, Celestino Ochoa Lizarbe, and Edwin Ochoa Lizarbe.

[2] Ms. Baldion's deceased mother and brother were Fortunata Baldeon Gutierrez and Edgard Pulido Baldeon.

Ms. Lizarbe and Ms. Baldion, aided by relatives and other village residents who were away during the massacre, returned to Lloccllapampa the next day and buried the dead in mass graves. Nothing more dignified was possible: many bodies were completely or partially destroyed, and the survivors were afraid that the soldiers might return. Among the dead, Ms. Lizarbe found her headless mother embracing her one-year-old son (Ms. Lizabe's brother).

Ms. Lizarbe was taken to a nearby village by one of her aunts. Ms. Baldion, her brothers, and her father – who had been away at the time of the massacre – tried to find refuge in the nearby river area. They stayed there for three weeks, avoiding soldiers who kept looking for them and shooting at them.

In September of 1985, the Peruvian military admitted that there had been mass killings at Accomarca. When interviewed shortly thereafter by the Senate Investigative Panel, Mr. Hurtado assumed responsibility for the massacre, and said that an informant had told him that the people in Accomarca/Lloccllapampa were connected with and sympathetic to the Sendero Luminoso. Mr. Hurtado said he was following orders to capture and destroy the enemy, and justified the killing of children and infants by explaining that the young would be indoctrinated by the Sendero Luminoso. The military, in short, was conducting an operation to exterminate and cleanse the civilian population in the Accomarca area, which it believed was aiding the Sendero Luminoso. Significantly, Mr. Hurtado expressed no remorse for his actions.[3]

Not surprisingly, Ms. Lizarbe still has nightmares and dreams about her mother and her siblings. She trembles at the sight of the military, and she is afraid to be left alone. She has not received any compensation from the Peruvian government for what happened on August 14, 1985. Ms. Baldion also continues to have nightmares about being chased and burned. She is still scared of fire today, and has a hatred for soldiers. She too has not received any compensation from the Peruvian government.

In 1992, a military tribunal found Mr. Hurtado guilty of abuse of authority, and sentenced him to six years in prison. Mr. Hurtado, however, never served any portion of his sentence because in 1995 President Fujimori and the Peruvian Congress enacted two decrees granting full amnesty for

---

[3]Under any applicable standard, Mr. Hurtado's conduct easily satisfies the standard for punitive damages.

anyone who may have violated human rights in the course of the fight against the Sendero Luminoso. In light of this amnesty, Mr. Hurtado continued serving in the Peruvian military and later obtained a promotion. No one else has been criminally prosecuted for the Accomarca Massacre.

In decisions handed down in 2001 and 2002, the Inter-American Court of Human Rights ruled that these amnesty decrees were null and void. The Peruvian Supreme Court later incorporated these decisions into Peruvian law. Mr. Hurtado, however, cannot be prosecuted in absentia, so he must be extradited to Peru before any criminal proceedings against him can begin or continue.

## II. APPLICABLE LAW AS TO DAMAGES

Although there is not much law on the issue, I believe that damages under the Torture Victim Protection Act of 1991, 28 U.S.C. § 1350 note, should be determined by reference to federal common law. Unlike the Alien Tort Statute, which is jurisdictional in nature and which does not create any substantive rights, *see Sosa v. Alvarez-Machain,* 542 U.S. 692, 712-13 (2004), the TVPA is a federally-created substantive cause of action. Given that the TVPA includes an exhaustion of remedies requirement, *see* P. Law 102-256, § 2(b), 106 Stat. 73, it would seem that Congress would want federal courts to apply federal common law on remedies (including damages) if the place where the violation occurred has chosen not to provide a remedy to the plaintiffs. Stated differently, if Congress intended for federal courts to apply the local law of the jurisdiction where the violation of the TVPA occurred, it would have said so.

I also agree with those courts which have concluded, after conducting choice-of-law analyses, that federal common law applies to damages under the TVPA. *See, e.g., Doe v. Rafael-Sarabia,* 348 F.Supp.2d 1112, 1158-59 (E.D. Cal. 2004); *Tachiona v. Mugabe,* 234 F.Supp.2d 401, 406-18 (S.D. N.Y. 2002). These damages include damages for wrongful death and for pain and suffering. They also include, where appropriate, punitive damages. *See Xuncax v. Gramago,* 886 F.Supp. 162, 199 (D. Mass. 1995).[4] On this record, all such damages should be, and will be, awarded.

---

[4] It appears that the law of Peru also provides for "material" (compensatory) and "moral" damages. So my awards of damages would remain the same even if Peruvian law applied to damages under the TVPA.

### III. AWARDS OF DAMAGES AND CONCLUSION

As a general matter, a human life is not subject to intrinsic monetary valuation. Indeed, any arbitrary value placed on a life threatens to demean it or cheapen it because of its obvious inadequacy. The same goes for human suffering. But placing values, for purposes of assessing damages, is all that a court can do. More importantly, it is what the TVPA requires. With this understanding, I award the following damages in this case:

- Teofila Ochoa Lizarbe: $2.5 million for pain and suffering & $2.5 million in punitive damages
- Cirilia Pulido Baldeon: $1.5 million for pain and suffering & $2.5 million in punitive damages
- Estate of Silvestra Lizarbe Solis: $1 million for wrongful death and pain and suffering & $ 2.5 million in punitive damages
- Estate of Gerardo Ochoa Lizarbe: $1 million for wrongful death and pain and suffering & $2.5 million in punitive damages
- Estate of Victor Ochoa Lizarbe: $1 million for wrongful death and pain and suffering & $2.5 million in punitive damages
- Estate of Ernestina Ochoa Lizarbe: $1 million for wrongful death and pain and suffering & $2.5 million in punitive damages
- Estate of Celestino Ochoa Lizarbe: $1 million for wrongful death and pain and suffering & $2.5 million in punitive damages
- Estate of Edwin Ochoa Lizarbe: $1 million for wrongful death and pain and suffering & $2.5 million in punitive damages
- Estate of Fortunata Badeon Gutierrez: $1 million for wrongful death and pain and suffering & $ 2.5 million in punitive damages
- Estate of Edgar Pulido Baldeon: $1 million for wrongful death and pain and suffering & $2.5 million in punitive damages

A final judgment will be issued separately.

DONE and ORDERED in chambers in Miami, Florida, this 4th day of March, 2008.

_____
Adalberto Jordán
United States District Judge

Copy to:   All counsel of record

Telmo Ricardo Hurtado Hurtado
Federal Correction Institution
#79395-004
15801 Southwest 137th Avenue
Miami, FL 33177